**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| LORI E. STRAIGHT, | ) | CASE NO. 1:12-CV-2208 |
| | ) | |
| Plaintiff, | ) | JUDGE WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | | |

Plaintiff, Lori E. Straight ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner")[1], denying her applications for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381(a), and Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 416(i), 423, *et seq.*  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be REVERSED and REMANDED for proceedings consistent with this Report and Recommendation.

---

[1]  On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security.  She is automatically substituted as the defendant in this case pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## I.  PROCEDURAL HISTORY

On March 5, 2009, Plaintiff filed applications for SSI, POD and DIB, alleging a disability onset date of May 12, 2008.  (Transcript ("Tr.") 12, 130.)  The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id*.)  On March 23, 2011, an ALJ held Plaintiff's hearing. (*Id*.)  Plaintiff appeared, was represented by an attorney, and testified.  (*Id*.)  Plaintiff's mother, Bonnie Straight, and a vocational expert ("VE") also testified.  (Tr. 12, 45.)  On April 14, 2011, the ALJ found that Plaintiff was not disabled.  (Tr. 20)  On June 27, 2102, the Appeals Counsel declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)

On August 29, 2012, Plaintiff filed her complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case. (Doc. Nos. 14, 16.)  Plaintiff argues that the ALJ erred in: (1) concluding that she did not satisfy the requirements for Listing 12.05(C); and (2) determining that her work as a table cleaner constituted past relevant work.

## II.  EVIDENCE[2]

### A.  Personal and Vocational Evidence

Plaintiff was born on April 7, 1981.  (Tr. 130.)  She previously worked as a

---

[2]  The ALJ determined that Plaintiff had the severe impairments of borderline intellectual functioning, obesity, seizure disorder, and depressive disorder.  (Tr. 14.)  Plaintiff does not challenge the ALJ's conclusion with respect to this issue.  Rather, she make the legal argument that the ALJ erred in determining that these severe impairments were not sufficient to satisfy Listing 12.05(C).  Accordingly, this Report & Recommendation discusses only the medical records and testimony that are relevant to that argument.

2

server/cleaner in a nursing home.  (Tr. 167.)  Plaintiff completed high school.  (Tr. 171.)

**B.    Medical Evidence**

    **1.    Treating Providers**

On August 17, 2009, Carl Rosenberg, M.D., examined Plaintiff.  (Tr. 333-34.) She reported a history of epilepsy, having been diagnosed in 1993, with her last epileptic event while waking having occurred five years before.  (Tr. 333.)  Plaintiff was taking 2000 mg of Depakote per day to control her epilepsy.  (*Id*.)  Plaintiff complained of daytime sleepiness, snoring and respiratory pauses.  (*Id*.)  Dr. Rosenberg noted that Plaintiff was obese.  (*Id*.)  An EEG revealed evidence of seizure activity over night.  (*Id*.) He diagnosed Plaintiff with epilepsy controlled by Depakote, and possible obstructive sleep apnea or narcolepsy.  (*Id*.)

In October 2009, Dr. Rosenberg placed Plaintiff on a CPAP for obstructive sleep apnea.  (Tr. 376.)  In April 2010, Plaintiff reported doing well with her CPAP.  (Tr. 370.) Plaintiff's mother reported that Plaintiff was moody with a decreased interest in activities.  (*Id*.)  Dr. Rosenberg prescribed Zoloft.  (*Id*.)

On February 8, 2011, a therapist at Signature Health diagnosed Plaintiff with moderate recurrent major depressive disorder.  (Tr. 517.)

    **2.    Agency Reports and Assessments**

On April 17, 2009, agency consultant Richard C. Halas, M.A., examined Plaintiff. (Tr. 280-89.)  He administered the Weschler Adult Intelligence Scale IV, and determined that Plaintiff's full scale IQ was 70, placing her in the second percentile when compared to the general population.  (Tr. 282.)  Plaintiff achieved a score of 74 in

verbal comprehension, 71 in perceptual reasoning, 74 in working memory, and 81 in processing speed.  (Tr. 285.)  Mr. Halas diagnosed Plaintiff with borderline intellectual functioning, and assigned her moderate limitations in the ability to: understand, remember and follow directions; and maintain attention and concentration and perform simple, repetitive tasks.  (Tr. 283.)  He determined that Plaintiff's ability to relate to others, including co-workers and supervisors, and to withstand the stresses and pressures associated with day-to-day work activity was "intact and not . . . impaired." (*Id*.)

On February 25, 2010, agency consulting clinical psychologist Eugene F. Maleski, Ph.D., responded to medical interrogatories regarding Plaintiff's mental impairments.  (Tr. 361-67.)  He opined that Plaintiff had memory impairment and borderline intellectual functioning.  (Tr. 361.)  He determined that Plaintiff did not satisfy the requirements of Listing 12.05(D) "despite a valid IQ score of 70" because Plaintiff had only moderate difficulties in concentration.  (Tr. 363.)  Dr. Maleski concluded that Plaintiff had no limitations in activities of daily living and maintaining social functioning. (Tr. 362.)  He also opined that Plaintiff "remained capable of doing the work that she has done before (dietary worker, bakery helper)," and that the "only functional limitations documented are moderate memory, attention and concentration problems which should not preclude doing simple, repetitive, manual tasks."  (Tr. 365.)

**C.    Hearing Testimony**

**1.    Plaintiff's Testimony**

At her March 23, 2011 administrative hearing, Plaintiff testified as follows:

4

Plaintiff was 29 years old.  (Tr. 31.)  She did not know her address or her date of birth.  (Tr. 31-32.)  She lived alone, and was able to read and write, but didn't like reading.  (Tr. 32.)  She was not certain whether she had any income, because her "mom knows that," and she did not drive.  (*Id*.)  At her last job, she had cleaned tables.  (Tr. 33.)  She had been discharged from that position, but was not sure why.  (Tr. 33-34.)  She had also worked as a bagger at a grocery store, but left because she "got confused."  (Tr. 35.)

Plaintiff generally slept from 12:30 in the afternoon until 10 at night, and stayed awake the rest of the night and morning, watching television.  (Tr. 35.)  She occasionally walked her dog.  (Tr. 36.)  Plaintiff had a boyfriend, who occasionally took her for rides on a golf cart.  (Tr. 38.)  She also sometimes rode his four-wheeler.  (*Id*.)  Her boyfriend lived with her.  (Tr. 39-40.)  He cooked meals and helped with the dishes.  (Tr. 40.)  Plaintiff could cook only simple things, like eggs, spaghetti and soup.  (*Id*.)

### 2.    Mother's Testimony

Plaintiff's mother, Bonnie Straight ("Ms. Straight"), testified as follows:

Plaintiff was in special education classes from kindergarten through twelfth grade, as she had retention, concentration and memory problems.  (Tr. 46.)  Plaintiff had an individual education plan ("IEP") throughout her education.  (*Id*.)

Ms. Straight felt that Plaintiff could not work due to Plaintiff's "ability to follow direction, maintain the enthusiasm to do it, to control what she's doing as far as forgetting to continue on with something.  It had to be a repetitive source of telling her how to do things, because I did work with her."  (Tr. 47.)  Plaintiff had worked with Ms.

5

Straight at a nursing home for five years.  (*Id*.)  Plaintiff's cousin had arranged for Plaintiff to get the job.  (*Id*.)  Plaintiff had cleaned off and reset the tables in the residents' dining hall.  (*Id*.)  Plaintiff had to be reminded "more than beyond the first couple weeks" on the job regarding "the placement of the silverware" and "[h]ow many people sat at the table."  (Tr. 48.)

In August 2008, Ms. Straight and Plaintiff had been terminated from the nursing home due to restructuring, and had moved from Pittsburgh to Ohio.  (Tr. 48-49.) According to Ms. Straight, Plaintiff's termination was the result of her own termination, as she stated, "And since I wasn't going to be there, they fe[lt] they couldn't have kept her."  (Tr. 49.)  Ms. Straight felt that Plaintiff was more depressed and was having problems adjusting to the move.  (Tr. 48.)  Plaintiff lived in a trailer next to Ms. Straight's trailer, and Ms. Straight noticed that Plaintiff didn't want to leave Plaintiff's trailer to eat together.  (Tr. 51.)  Plaintiff never wanted to participate in any of the activities at the campground where they lived.  (Tr. 52.)  Ms. Straight had "to drag [Plaintiff] to go anywhere."  (Tr. 53.)

### 3.    VE Testimony

The VE testified that Plaintiff's past relevant work – as a bagger, deli clerk and cleaning tables – was all performed either at the unskilled level.  (Tr. 61.)  Her work as a table cleaner was light work, and her other positions were medium work.  (*Id*.)

## III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y*

*of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 *and* 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment does not prevent herfrom doing her past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does

7

prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV.  SUMMARY OF COMMISSIONER'S DECISION

In his April 14, 2011 decision, the ALJ made the following findings of fact and conclusions of law:

1.   Plaintiff meets the insured status requirements of the Act through December 31, 2013.

2.   Plaintiff has not engaged in substantial gainful activity since May 12, 2008, the alleged onset date.

3.   Plaintiff has the following severe impairments: borderline intellectual functioning, obesity, seizure disorder, and depressive disorder.

4.   Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.   Plaintiff has the residual functional capacity ("RFC") to perform no heavy exertional work due to her obesity.  She can perform simple, routine repetitive tasks, and jobs that do not require work around dangerous machinery or unprotected heights.

6.   Plaintiff is capable of performing past relevant work as a table cleaner. This work does not require the performance of work related activities precluded by Plaintiff's RFC.

7.   Plaintiff has not been under a disability, as defined in the Act, from May 12, 2008 through the date of the ALJ's decision.

(Tr. 14-19.)

8

## V.  LAW & ANALYSIS

**A.  Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ.  *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

**B.  Plaintiff's Arguments**

Plaintiff argues that the ALJ erred in concluding that: (1) she did not satisfy the

9

requirements of Listing 12.05(C); and (2) her work as a table cleaner constituted past

relevant work.

### 1.    Listing 12.05(C)

Listing 12.05 sets forth the requirements for finding disability resulting from

"mental retardation." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.  In it's first

paragraph, Listing 12.05 provides the diagnostic description of the impairment:

> Mental retardation refers to significantly subaverage general
> intellectual functioning with deficits in adaptive functioning
> initially manifested during the developmental period; i.e., the
> evidence demonstrates or supports onset of the impairment
> before age 22.
>
> The required level of severity for this disorder is met when
> the requirements in A, B, C, or D are satisfied.

Id.  In other words, in order to satisfy the requirements of the Listing, an individual must,

first, demonstrate the onset of the deficits described in the diagnostic description prior

to age 22, and, second, satisfy the requirements of any one of the four subsections.

See Hayes v. Comm'r of Soc. Sec., 357 F. App'x 672, 676 (6th Cir. 2009) (noting that

an IQ below 70 was not sufficient on its own to satisfy Listing 12.05, as the claimant

must "still satisfy the three-prong definition of mental retardation" and one of the

subsections).

As relevant to this case, an individual may satisfy the requirement of subsection

(C) by demonstrating "valid verbal, performance, or full scale IQ of 60 through 70 and a

physical or other mental impairment imposing an additional and significant work-related

limitation of function." Id.  In other words, subsection (C) sets forth two requirements:

(1) an IQ requirement; and (2) a significant limitation requirement.

10

Here, the ALJ identified two bases for determining that Plaintiff did not satisfy

subsection (C):

> [Plaintiff] does not have a valid verbal, performance or full
> scale IQ of 60 through 70 and a physical or other mental
> impairment imposing an additional and significant work-
> related limitation of function. [Plaintiff's] test scores were all
> above 70.  Further, [Plaintiff] alleged disability based on
> seizures, sleep apnea and obesity.  The record showed that
> she had one seizure five years after starting medication,
> when the doctors attempted to wean her from her medicine.
> Dr. Rosenberg opined [that Plaintiff's] obstructive sleep
> apnea was controlled with a CPAP machine.  Although her
> obesity may cause some fatigue, it was not disabling.
> [Plaintiff] worked, and biked.

(Tr. 17.)  Plaintiff argues that the ALJ erred in two ways: first, by misstating the record

with respect to her IQ score; and, second, by concluding that she did not demonstrate

an additional impairment that met the requirements of the Listing.

### a.    The Diagnostic Description

The Commissioner argues that Plaintiff is not entitled to remand in this case

because she has not demonstrated that she satisfies the threshold diagnostic

description of the Listing, as she cannot establish the "significant sub-average general

intellectual functioning with deficits in adaptive functioning initially manifested during the

developmental period" required by that description.  The scarce evidence in the record

on this issue makes this question a close one in this case.  Plaintiff reported to Mr.

Halas that she had graduated from high school and maintained average grades, but

had done so in special education classes.  (Tr. 281.)  Ms. Straight testified that Plaintiff

was subject to individual education plans "consistently" throughout her schooling, and

that she had attended "learning disability classes" since kindergarten.  (Tr. 46.)  When

11

Plaintiff was 12 years old, a neurologist opined that she was normal comprehension and speech.  (Tr. 487.)  When Plaintiff was 17 years old, a different neurologist noted that she was enrolled in the eleventh grade and was "an A/B student."  (Tr. 475.)

There is no other evidence in the record regarding Plaintiff's intellectual or adaptive functioning prior to age 22.  The ALJ did not discuss this issue in his decision.  As discussed below, it is recommended that this Court remand this case for further consideration of whether Plaintiff satisfies the requirements of subsection (C).  Accordingly, it is also recommended that this Court instructed the ALJ, on remand, to develop the record with respect to the issue of whether Plaintiff satisfies the diagnostic description of mental retardation in Listing 12.05.

### b.    The IQ Requirement

The record contradicts the ALJ's conclusion that Plaintiff did not meet the IQ score requirement of Listing 12.05(C).  Although Dr. Halas assigned Plaintiff scores above 70 in individual categories, his report indicates that he assigned her a full-scale IQ score of exactly 70.  (Tr. 282.)  A claimant can satisfy the IQ requirement of subsection (C) by demonstrating a "valid . . . full-scale IQ of *60 through 70*."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C) (emphasis added).  Accordingly, substantial evidence does not support the ALJ's conclusion that Plaintiff failed to satisfy the IQ requirement of subsection (C).

### c.    The Significant Limitation Requirement

With respect to subsection (C)'s significant limitation requirement, Plaintiff argues that the ALJ committed legal error when he concluded that her impairments

12

were not sufficient to satisfy the Listing.  Specifically, Plaintiff argues that, because the ALJ concluded, at step two of the sequential analysis, that Plaintiff suffered from severe impairments, he necessarily determined that she suffered from impairments that satisfied the requirements of Listing 12.05(C).  In other words, Plaintiff argues that a severe impairment is also one that imposes a "significant work-related limitation of function," as required by subsection (C).

Although neither the Sixth Circuit nor this Court has addressed the precise issue of whether an ALJ's finding that a claimant has a severe impairment at step two is sufficient to satisfy the significant limitation requirement of 12.05(C),[3] Plaintiff's argument finds support from several other sources. The relevant regulations generally equate a "severe impairment"  with one that significantly limits an individual's ability to perform work activities.  For example, at step two of the sequential analysis, an ALJ considers whether a claimant has any impairment that satisfies the definition of "severe" at 20 C.F.R. §§ 1520(c) and 416.920(c).  Those sections, which are identical, provide:

> You must have a severe impairment.  If you do not have *any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities*, we will find that you do not have a severe impairment and are, therefore, not disabled.

---

[3]  In *Williamson v. Secretary of Health and Human Services*, 796 F.2d 146 (6th Cir. 1986), the Sixth Circuit presumed, without discussing the matter, that a severe impairment would satisfy the additional impairment requirement.  In that case, in affirming the Commissioner's decision, the Sixth Circuit observed that the plaintiff had failed to demonstrate that he satisfied the requirements of former § 112.05(C) of Appendix 1, in part because "the ALJ found that Williamson had no severe impairment . . . *which means that he had no significant, additional physical or mental impairment* as required by the listing." 796 F.2d at 151.

(emphasis added).  Further, the regulations define a "non-severe impairment" as one
that "does not significantly limit your physical or mental ability to do basic work
activities."  20 C.F.R. § 404.1521(a).  Additionally, the introductory paragraph to the
listings of mental disorders directly equates a severe impairment with one that satisfies
subsection (C) of Listing 12.05:

> For paragraph (C), we will assess the degree of functional
> limitation the additional impairment(s) imposes to determine
> if it significantly limits your physical or mental ability to do
> basic work activities, *i.e., is a "severe" impairment(s), as
> defined in §§ 404.1520(c) and 416.920(c).*

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 (emphasis added).  Accordingly, the
relevant regulations compel the conclusion that a severe impairment at step two
satisfies the significant limitation requirement of Listing 12.05(C).

Those circuit courts that have considered the issue have uniformly concluded
that, where an ALJ determines, at step two of the sequential analysis, that impairment
is sufficient to satisfy the significant limitations requirement of Listing 12.05(C).  *See,
e.g., Cook v. Bowen*, 797 F.2d 687, 690-91 (8th Cir. 1986) (noting case law and
determining that "where a claimant's impairment is found to be severe under the
second step, it automatically satisfies the significant limitations standard of section
12.05(C)"); *Branham v. Heckler*, 775 F.2d 1271, 1273 (4th Cir. 1985) ("The plaintiff
correctly argues that the significant limitation under section 12.05(C) need not be
disabling in and of itself. If the plaintiff's physical impairment were required to be
independently disabling, section 12.05(C) would be rendered meaningless."); *Nieves v.
Sec'y of Health and Human Servs*, 775 F.2d 12, 14 (1st Cir. 1985) ("Because claimant's

14

impairment was found to be severe, *a foriori* it satisfies the significant limitations
standard."); *Edwards v. Heckler*, 736 F.2d 625, 631 (11th Cir. 1984) ("In other words, by
showing the existence of a severe impairment, Edwards has shown that he meets the
second-half requirement of section 12.05(C)").  Further, at least one other court in this
Circuit has applied the same reasoning to make the same conclusion.  *See, e.g,*
*Breitenstein v. Astrue*, No. 3:10-CV-032, 2011 WL 1235018 (S.D. Ohio Jan. 6, 2011)
(Ovington, Mag. J.) ("In other words, the ALJ's determination at Step 2 that Plaintiff's
stuttering, depression, and anxiety were 'severe' impairments under 20 C.F.R.
416.920(c), he had effectively determined that these impairments imposed 'additional
and significant work-related limitation of function' in satisfaction of Listing 12.05C."),
*report and recommendation adopted sub nom. Breitenstein v. Comm'r of Soc. Sec.,*
3:10-CV-032, 2011 WL 1234902 (S.D. Ohio Mar. 30, 2011)

        In this case, at step two of his sequential analysis, the ALJ concluded that
Plaintiff had three severe impairments in addition to her borderline intellectual
functioning – depressive disorder, seizure disorder, and obesity.  (Tr. 15.)  He also
concluded that these impairments "significantly limited [Plaintiff's] abilities to perform
basic work activities."  (*Id*.)  Under the relevant regulations, and as suggested by the
decisions of other federal courts, this finding was sufficient to satisfy the significant
limitations requirement of Listing 12.05(C).  Accordingly, substantial evidence does not
support the ALJ's conclusion that Plaintiff's impairment failed that requirement.  Thus, it
is recommended that this Court reverse the decision of the Commissioner, and remand
this case with instructions to the ALJ to further consider, in light of record evidence

demonstrating that Plaintiff satisfied the IQ and the significant limitation requirements of subsection (C), whether Plaintiff satisfies the requirements of the Listing such that she is entitled to benefits.[4]

### 2.    Plaintiff's Past Work

Plaintiff also argues that substantial evidence does not support the ALJ's conclusion that her work at the nursing home constituted substantial gainful activity to which she could return.  The Commissioner argues that Plaintiff's work was sufficient to constitute substantial gainful activity because Plaintiff's testimony demonstrated that she had the necessary skills and ability to remain employed for five years.[5]  Plaintiff's

---

[4]    Plaintiff requests that this Court vacate the Commissioner's decision and remand the case for an award of benefits.  (Plaintiff's Brief ("PL. Br.") at 15, 17.)  This Court, however, will direct an award of benefits only where "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health and Human Servs*, 17 F.3d 171, 176 (6th Cir. 1994).  Although the record suggests that the ALJ erred in determining that Plaintiff did not satisfy the IQ and significant limitation requirements of subsection (C), it is silent with respect to whether Plaintiff satisfied the requirements of the diagnostic description in the first paragraph of Listing 12.05.  Accordingly, the record does not adequately establish Plaintiff's entitlement to benefits. On remand, the ALJ must consider whether Plaintiff can satisfy all the requirements of the Listing before deciding whether she is entitled to benefits in this case.

[5]    The Commissioner also argues that Ms. Straight's testimony was insufficient to establish that Plaintiff's work was not substantial gainful activity because Plaintiff's description of her work contradicted Ms. Straight's testimony regarding Plaintiff's duties.  (*See* Comm'r Br. at 17.) The ALJ, however, did not question Ms. Straight's credibility.  Nor did he rely on any contradiction between Ms. Straight's testimony and other information in the record to make his determination regarding this issue. Accordingly, the Commissioner's argument constitutes impermissible *post hoc* rationalization that this Court should not consider.  *See Berryhill v. Shalala*, 4 F.3d 993 at *6 (unpublished opinion).

argument is well taken.

The regulations recognize that, where work is performed under special conditions, it might not constitute substantial gainful activity:

> The work you are doing may be done under special conditions that take into account your impairment, such as work done in a sheltered workshop or as a patient in a hospital. If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity. Also, if you are forced to stop or reduce your work because of the removal of special conditions that were related to your impairment and essential to your work, we may find that your work does not show that you are able to do substantial gainful activity. However, work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level. Examples of the special conditions that may relate to your impairment include, but are not limited to, situations in which--
>
> (1) You required and received special assistance from other employees in performing your work;
>
> (2) You were allowed to work irregular hours or take frequent rest periods;
>
> (3) You were provided with special equipment or were assigned work especially suited to your impairment;
>
> (4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work;
>
> (5) You were permitted to work at a lower standard of productivity or efficiency than other employees; or
>
> (6) You were given the opportunity to work despite your impairment because of family relationship, past association with your employer, or your employer's concern for your welfare.

20 C.F.R. § 404.1573(c).

Here, Plaintiff's mother testified that Plaintiff obtained her job as a table cleaner through a cousin.  (Tr. 47 ("[I]t was my – our cousin that got her the job there, that worked with her there.").)  She also testified that Plaintiff had to be constantly reminded regarding the placement of silverware on tables and of the number of people who sat at a table.  (Tr. 48.)  This suggests that Plaintiff was permitted to work at a lower standard than might have been expected of other employees, and that she received assistance from other employees in performing her work.  Further, Ms. Straight testified that Plaintiff was terminated because Ms. Straight was terminated and would no longer be at the facility.  (Tr. 49 ("And since I wasn't going to be there, they feel they couldn't have kept her.").)  At the very least, this testimony invites consideration of the factors set forth in 20 C.F.R. § 404.1573(c).  The ALJ's decision does not reflect that he considered whether the circumstances of Plaintiff's position at the nursing home were such that her work might not constitute substantial gainful activity.  Given the recommendation that this case be remanded for further consideration of whether Plaintiff satisfies the requirements of Listing 12.05(C), on remand, the ALJ should also consider the issue of Plaintiff's past work in light of § 404.1573(c).  Accordingly, it is recommended that, on remand, this Court instruct the ALJ to consider, in light of the factors set forth in § 404.1573(C), whether Plaintiff's work as a table cleaner constituted substantial gainful activity.

## VI.   CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the

Commissioner's final decision be REVERSED and REMANDED for proceedings

consistent with this Report and Recommendation.

s/ *Nancy A. Vecchiarelli*

U.S. Magistrate Judge


Date: April 18, 2013

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See** *United States v. Walters***, 638 F.2d 947 (6th Cir. 1981);** *Thomas v. Arn***, 474 U.S. 140 (1985),** *reh'g denied***, 474 U.S. 1111 (1986).**

19